## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|   |   |   |
|---|---|---|
| STEVEN GROHS, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 13-7870 (KM) (MAH) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CHRISTOPHER HOLMES, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## KEVIN MCNULTY, U.S.D.J.

### I.    INTRODUCTION

Plaintiff, Steven Grohs, is a civilly committed person currently residing at the Special Treatment Unit Annex (hereinafter the "STU-Annex") in Avenel, New Jersey. He is proceeding *pro se* with a civil rights complaint under 42 U.S.C. § 1983 seeking declaratory, injunctive, and monetary relief. Mr. Grohs has filed an application to proceed *in forma pauperis,* which is granted.

The Court must now review the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit. For the reasons set forth below, the complaint will be permitted to proceed only in part, and only against defendant Fratalone.

### II.    BACKGROUND

The allegations of the complaint will be considered true for purposes of this screening. Mr. Grohs is housed at the STU-Annex, not as a prisoner

serving a sentence, but as a civilly committed person. The complaint names the following individuals as defendants: (1) Christopher Holmes – Director of Operations for the STU; (2) Angel L. Santiago – Administrator for the STU; (3) Robert Buechele – Associate Administrator for the STU; (4) Sara Davis – Assistant Superintendent for the STU; (5) Bruce Davis – Assistant Administrator for the STU; (6) Deborah Maloney – Executive Assistant Administrator for the STU; (7) M. Rock-Asencio – Lieutenant for the STU ( "Rock"); (8) Fratalone – Sergeant for the STU; and (9) B. Westrich – Sergeant for the STU. Mr. Grohs' allegations can be separated into two categories: (a) access to courts; and (b) First Amendment retaliation.

A. Access to Courts

    i.    *Law Library Facilities*

Mr. Grohs asserts that the STU-Annex's law library is inadequate. Defendants Santiago, Buechele, S. Davis, B. Davis and Maloney allegedly believe that, because civilly committed residents have the benefit of the public defender, they need not be afforded the same level of law library access and facilities as prison inmates.

Mr. Grohs alleges that the law library at the STU-Annex is confined to the Education Room, which measures eight feet by twelve feet. When educational testing is ongoing, the law library is closed. The law library has LEXIS/NEXIS access, but not on line; an external hard drive is plugged into the USB port of the computer. That system does not permit the user to review

"(1) any practice guides & treatises; (2) any practice check lists; (3) any practice forms; and (4) any State of New Jersey Court forms." (Dkt. No. 1 at p. 9.)

According to Mr. Grohs, the only other legal research materials available in the law library are out of date. He alleges that he has been unable to research legal citations in pleadings filed by adversaries. At other times, he says, residents have been told by the courts that the necessary forms should be available from their facility library, but they are not in fact available at the STU-Annex. Residents who want to type rather than write their legal documents are forced to buy a Brother Desktop Publisher at a cost of $500.

    ii.   *Paralegal to Other Residents*

Mr. Grohs alleges that he is a paralegal[1] for the resident population at the STU-Annex. Certain policies and procedures at the STU-Annex, he says, have hampered him in that task. For example, Mr. Grohs has been attempting to assist another resident named Rayford Smith with proceedings in Illinois. In October, 2013, however, Mr. Smith was placed in Temporary Closed Custody, and Mr. Grohs was not able to meet with him. Legal documents he has been working on for other residents have been seized by STU officials, *see infra*.

    iii.   *Photocopy Service*

Mr. Grohs also complains about the photocopy service and procedure at the STU-Annex. Residents must submit their papers to another resident for copying by Sunday at 5:30 p.m. Copies are supposed to be made by the following Monday at 9:30 a.m. This strict policy, he states, can cause residents

---

[1]    It appears that Mr. Grohs is using that designation informally, in reference to his practice of assisting other residents.

to run afoul of court deadlines. Sometimes other residents' copy jobs have been done incorrectly or not at all. Mr. Grohs, acting as paralegal to Brian Racy, knows of court filings being made out of time as a result. In general, this inadequate copying service has impaired residents' access to court.

iv.   *Space to Store Legal Materials*

Mr. Grohs also complains about the limited amount of space he is given to store his personal and legal materials. Cubicles contain three or four inmates each, and each resident is permitted to possess up to four twenty-seven gallon storage containers. Mr. Grohs states that he has an injury to his right elbow and lower spinal column. This makes it difficult or impossible, when containers are stacked, to move the top container and gain access to the bottom one.

B. <u>First Amendment Retaliation</u>

i.   *Confiscation of Legal Materials – Late May and December 18, 2013*

Mr. Grohs alleges that, in late May, 2013, Defendant Rock confiscated the storage container in his cubicle. This storage container contained legal materials. Grohs complained, and his storage container was returned.

On December 18, 2013, Mr. Grohs' legal materials were again confiscated, this time by Defendant Westrich. The seized documents included Mr. Grohs's own documents as well as those of other residents whom he was assisting. Westrich also seized from Mr. Grohs nineteen paper clips and one plastic forty-five degree angle. Approximately one hour later, Mr. Grohs'

personal legal papers were returned to him; the other residents' papers were apparently returned to them.

On the same date, he was taken to another building and placed in a holding cell for forty-five minutes. Defendant B. Davis informed Mr. Grohs that this was for the purpose of meeting with him about previous complaints that he had made. When Mr. Grohs informed B. Davis of the confiscation of his materials earlier that day, she handed him a letter authored by Santiago dated December 6, 2013, stating the institution's policies. According to Mr. Grohs, the letter could only have addressed the May 28, 2013 seizure of materials, but not the December 18, 2013 seizure, which occurred after the date of the letter.

    ii.    *Partial Strip Search – June 2, 2013*

Mr. Grohs alleges that on June 2, 2013, in the recreation yard, he was partially strip searched by Defendant Fratalone and other unnamed officers. The search consisted of an officer's placing his gloved hands inside Mr. Grohs's underwear and on his genitals. The officer also pulled down Mr. Grohs's pants and briefly exposed his buttocks. Mr. Grohs was surrounded by eight officers at the time. After this search, Mr. Grohs heard defendant Fratalone observe, "I hope that was worth his hot water." (Dkt. No. 1 at p. 22.) This, Mr. Grohs believes, was a reference to his pending case (Civ. No. 12-905) concerning allegedly inadequate hot water in the showers at the STU-Annex.

C. <u>Counts Raised in the Complaint</u>

Based on the above factual allegations, Mr. Grohs asserts three counts in his complaint. First, he alleges a violation of his First and Fourteenth

Amendment right to access to the courts. Second, he alleges a violation of his First Amendment right to be free from retaliation for petitioning the government for a redress of grievances. Finally, Mr. Grohs raises state law claims under the New Jersey Constitution, the New Jersey Patients' Bill of Rights, and the New Jersey Conscientious Employee Protection Act ("NJCEPA").

### III.   STANDARD OF REVIEW

A. <u>Standard for *Sua Sponte* Dismissal</u>

District courts must review complaints in those civil actions in which a plaintiff is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B). The statute directs district courts to dismiss *sua sponte* any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. That analysis is sometimes informally referred to as "screening."

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (per curiam; not precedential) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). Under that standard, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive screening, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMC Shadyside*,

578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). While *pro se* pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

B. <u>Section 1983 Actions</u>

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d

606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

## IV.   DISCUSSION

A. <u>Access to the Courts</u>

Mr. Grohs' first claim asserts that defendants Holmes, Santiago, Buechele, S. Davis, B. Davis, and Maloney have violated his First and Fourteenth Amendment right to reasonable access to the courts. Mr. Grohs states that the law library facility at the STU-Annex is insufficient for residents' needs. Additionally, Mr. Grohs states that certain policies at the facility have affected his ability to effectively serve as a paralegal to other residents. He also claims that the photocopy service procedure at the facility is inadequate. Mr. Grohs alleges that the residents are not provided adequate storage for their legal materials. Finally, he claims that on at least two occasions, his legal papers were seized (but returned).

i.   *Adequacy of the Law Library*

"The Supreme Court has recognized that 'adequate law libraries' are a component of the right of access to the courts." *O'Connell v. Williams*, 241 F. App'x 55, 57 (3d Cir. 2007) (per curiam) (citing *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). That right is not limited to prisons. For example, "[l]ike prisoners, individuals who are involuntarily committed to mental institutions have the right to access the courts." *Aruanno v. Main*, 467 F. App'x 134, 136 (3d Cir. 2012) (per curiam; not precedential) (citing *Cornett v. Donovan*, 51 F.3d 894, 897-98 (9th Cir. 1995)). "Where prisoners assert that defendants' actions have

inhibited their opportunity to present a past legal claim, they must show (1)
that they suffered an 'actual injury' – that they lost a chance to pursue a
'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other
'remedy that may be awarded as recompense' for the claim other than in the
present denial of access suit." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir.
2008) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). Thus, to satisfy
the requisite pleading requirements, "[t]he complaint must describe the
underlying arguable claim well enough to show that it is 'more than mere
hope,' and it must describe the 'lost remedy'" *Id.* at 205-06 (citing *Christopher*,
536 U.S. at 416-17) (footnotes omitted).

 In this case, Mr. Grohs has not alleged any "actual injury" as defined in
*Christopher* and *Monroe*. In particular, he does not identify any claim or issue
that he lost the chance to pursue as a result of the inadequate law library at
the STU-Annex. This claim will be dismissed for failure to state a claim.

 ii. *Paralegal Services to Other Residents*

 Mr. Grohs next argues that STU-Annex facilities and policies have
affected his ability to effectively serve as a paralegal to other residents. Mr.
Grohs may well have been of assistance to others, but his self-proclaimed
status as a paralegal does not create any additional constitutional rights. *See
Perotti v. Quinones*, 488 F. App'x 141, 145 (7th Cir. 2012) ("[I]nmates do not
have a constitutional right to provide legal assistance to other prisoners.")
(citing *Shaw v. Murphy*, 532 U.S. 223, 231 (2001); *Watkins v. Kasper*, 599 F.3d
791, 797 (7th Cir. 2010)); *see also Payne v. Pummill*, No. 13-1172, 2013 WL

6175819, at *1 (S.D. Ohio Nov. 22, 2013) ("While the First Amendment right of prisoners for access to the courts is well-established, a prisoner has no independent right to assist other prisoners with their legal work.") (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (en banc)), *report and recommendation adopted by*, 2014 WL 272598 (S.D. Ohio Jan. 23, 2014); *Armstrong v. Coleman*, No. 11-1074, 2013 WL 3776919, at *11 (W.D. Pa. July 15, 2013) (noting that "inmate-to-inmate correspondence that includes legal assistance does not receive any more constitutional protection than correspondence between inmates without any legal assistance.") (citations omitted).

Mr. Grohs is not a prison inmate, but a civilly committed person. I see no distinction between those statuses, however, that would add a constitutional dimension to his claimed paralegal status. Accordingly, Mr. Grohs fails to state a cognizable claim that he has a constitutional right to provide legal assistance to other residents. (And only they have standing to assert their own access or right-to-counsel claims.) This claim, too, is dismissed.

    iii.   *Photocopying Services*

Mr. Grohs next asserts that the photocopying procedure and services at the STU-Annex have affected his access to the courts. He complains of the charges imposed, the quality of service, the effect on residents' ability to meet court deadlines, and so on. *See supra.* Mr. Grohs states that, in two of his cases, he incurred additional trouble and costs preparing motions to file papers late.

To begin with, there is no constitutional right to free photocopies. *See Kelly v. York County Prison (Kelly I)*, 325 F. App'x 144, 145 (3d Cir. 2009) (per curiam) (citing *Johnson v. Moore*, 948 F.2d 517, 521 (9th Cir. 1991); *Harrell v. Keohane*, 621 F.2d 1059, 1061 (10th Cir. 1980)). Neither prisoners nor non-prisoners have such a right. Nothing about Mr. Grohs's status as a civilly committed person suggests a contrary rule.

If the photocopying issue is to take on a constitutional dimension, it must be as a claim of impaired access to the courts. *See Drake v. Muniak*, No. 13-3868, 2014 WL 1665045, at *6-7 (D.N.J. Apr. 24, 2014) (analyzing photocopying claim as an access-to-court claim) (citing *Kelly I*, 325 F. App'x at 145). As noted above, such a claim requires an allegation of "actual injury," in the sense of a lost opportunity to pursue a non-frivolous claim.

Here, as elsewhere, I will not consider Mr. Grohs's attempt to weave other STU-Annex residents' issues together with his own. These other residents' individual circumstances do not demonstrate that Mr. Grohs himself sustained an "actual injury."

As to himself, Mr. Grohs alleges as follows:

> Plaintiff, in two cases, Grohs v. Dept. of Human Services & Dept. of Corr., A-5684-12, and Grohs v. Dept. of Corr., A-4913-12, was unable to acquire copies of documents in time for timely meeting court deadlines because Defendants will not recognize these deadlines. In these instances, Defendants caused Plaintiff to incur additional litigation costs for his preparation of motions to file the late pleadings within time for the Appellate Court.

(Dkt. No. 1 at p. 15.)

This paragraph does not set out an "actual injury." Even if inadequate photocopying services caused him to file documents beyond court deadlines, he does not allege "actual injury"— *i.e.,* that the courts refused to consider the issues raised in those filings. He does not make any allegation from which the court could conclude that the issues he raised were non-frivolous or arguable; the issues are not described at all. He does not allege that remedies other than an access-to-court claim are inadequate to address the problem. The obvious alternative remedy is a motion to file papers out of time, but Grohs portrays that very remedy as an "injury." It is not; preparation of a motion to file out of time is at worst an inconvenience, and it does not equate to "actual injury" in the sense of loss of nonfrivolous claim. Accordingly, this claim, too, will be dismissed.

    iv.    *Space to Store Documents*

Mr. Grohs also alleges that the defendants have provided him with inadequate storage facilities for his legal and personal papers. Mr. Grohs, along with several other residents of the STU-Annex, are pursuing a conditions-of-confinement claim (which includes inadequate storage space) against members of the STU-Annex staff in another case before this Court. (*See* Civ. No. 13-3877.) On September 17, 2014, I dismissed that complaint without prejudice, giving the plaintiffs (including Mr. Grohs) the opportunity to file an amended complaint. These allegations would properly be made and considered in that case, Civ. No. 13-3877.

To the extent that this lack of storage space relates to Mr. Grohs' access-to-courts claim in this action, it fails to state a claim upon which relief may be granted. Mr. Grohs fails even to allege that this purported lack of storage space caused him "actual injury" in the sense that he was prevented from presenting non-frivolous or arguable claims to the courts. Accordingly, this claim will be dismissed.

     v.    *Confiscation of Legal Papers*

Mr. Grohs alleges that in late May, 2013, his storage container was confiscated, with legal papers inside. On or about May 29, 2013, however, the storage container was returned. Any deprivation was minimal and temporary. The precise duration is not alleged, but it appears to have been a few days, at the most.

On December 18, 2013, Mr. Grohs alleges, defendant Westrich seized legal documents from him. Westrich also seized items from Mr. Grohs that he considered contraband, such as metal paper clips and "(1) plastic 45 degree angle." About one hour later, Mr. Grohs' personal legal files were returned to him. Papers pertaining to other residents were reportedly returned to them. Mr. Grohs was then ordered by Westrich "to not be in possession of any more documents belonging to other residents and outside of the law library." (Dkt. No. 1 at p. 27.)

As noted above, there is no constitutional right to be a paralegal for others. And Mr. Grohs fails to state an access-to-courts claim with respect to these two incidents. As the complaint alleges, Mr. Grohs was deprived of his

own legal papers for a few days in May 2013, and for about an hour in December 2013. The complaint does not allege that, in those brief periods of separation, Mr. Grohs suffered some "actual injury" in the sense of losing the opportunity to litigate a non-frivolous or arguable claim.

Accordingly, this claim will be dismissed.

B. Deprivation of Personal Property

Mr. Grohs also may be attempting to raise a constitutional claim of deprivation of personal property, based on Westrich's seizure of nineteen paper clips and one "45 degree angle." Routine claims of property deprivation or damage, even at the hands of a State actor, are not automatically constitutional claims:

> An unauthorized deprivation of property by a state actor, whether intentional or negligent, does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 328 (1986). In *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982), the Supreme Court explained, however, that post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action.

*Stokes v. Lanigan*, No. 12-1478, 2012 WL 4662487, *4 (D.N.J. Oct. 2, 2012).

First, there is a post-deprivation remedy. New Jersey provides such a remedy through the New Jersey Tort Claims Act, N.J. STAT. ANN. § 59:1-1, *et seq.* Second, this is not a claim addressed to an "established state procedure."

On the contrary, Mr. Grohs claims an erroneous deprivation: *i.e.,* that he was permitted to have these items, but Westrich seized them anyway. No viable due process claim is alleged.

To the extent that Mr. Grohs is also attempting to raise a deprivation-of-property claim, it will be dismissed.

## C. First Amendment Retaliation

Mr. Grohs next asserts multiple violations of his First Amendment right to be free from retaliation for petitioning the government for a redress of grievances. In these claims he names defendants Santiago, S. Davis, B. Davis, Rock, Fratalone and Westrich. The relevant incidents are alleged to have occurred on May 28, June 2, August 28, and December 18, 2013.

### i. *Late May, 2013*

In May 2013, Rock allegedly seized Mr. Grohs's legal materials and returned them a few days later, as described above.

"A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mack v. Yost,* 427 F. App'x 70, 72 (3d Cir. 2011) (per curiam) (quoting *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003)).

Mr. Grohs alleges constitutionally protected conduct in the form of filing grievances and civil complaints. *See Kelly v. York Cnty. Prison (Kelly II),* 340 F. App'x 59, 61 (3d Cir. 2009) (per curiam) ("The filing of grievances is protected

under the First Amendment.") (citing *Mitchell*, 318 F.3d at 530); *see also*

*Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997) (filing of civil complaint is

constitutionally protected conduct under the First Amendment).

These temporary deprivations of files, however, do not rise to the level of

an adverse action. As Judge Sheridan has noted:

> Some courts have found that removing legal materials
> from a prisoner's cell *and failing to return them* states a
> cognizable retaliation claim. *See Jean-Laurent* [*v.*
> *Lane,*] [No. 11-0186], 2013 WL 600213, at *10
> (N.D.N.Y. Jan. 24, 2013) (destruction of legal material
> and documents constitutes an adverse action for
> purposes of retaliation claim); *Doe v. Yates*, No. 08-
> 1219, 2009 WL 3837261, at *6 (E.D. Cal. Nov. 16,
> 2009) (finding that plaintiff had stated a cognizable
> retaliation claim where legal materials  were removed
> and that when they were returned many of the legal
> documents were missing), *report and recommendation*
> *adopted by*, 2010 WL 1287056 (E.D. Cal. Jan. 13,
> 2010).

*Scott v. Ellis*, No. 13-2578, 2013 WL 5300685 at *9 (D.N.J. Sept. 18, 2013)

(emphasis added). Here, the materials were almost immediately returned,

apparently intact. *See Baker v. Mackie*, No. 10-0285, 2010 WL 5087278, at *5

(W.D. Mich. Dec. 7, 2010) ("While a retaliatory cell search that includes the

confiscation of legal materials may, in some circumstances, be considered

sufficiently adverse to satisfy the adverse-action requirement . . . this is not

such a case. Plaintiff's legal materials were returned to him only five days after

the search, after Plaintiff arrived at another facility. Under these circumstances

. . . Plaintiff's allegations about his cell search are not sufficiently adverse.")

(internal citation omitted). A constitutional claim does not arise every time a

resident's property is temporarily moved. The retaliation claim, to the extent it arises from the May 2013 incident, is dismissed.

    ii.    *June 2, 2013*

Mr. Grohs alleges a further incident of retaliation on June 2, 2013. Grohs entered the recreation yard with a manila envelope, and returned to the entry gate without it. Fratalone (accompanied by other unnamed officers) ordered an officer to search Mr. Grohs. The officer placed his gloved hands inside Mr. Grohs' underwear and on his genitals, and the search had the result of partially displaying Mr. Grohs's buttocks. The usual policy would be a search in a private area. After the search, Mr. Grohs heard an "unfamiliar voice" of one of the officers state, "I hope that was worth his hot water." Mr. Grohs claims that this comment referred to his case pending before me, Civ. No. 12-0905, in which Mr. Grohs has alleged that the STU-Annex has insufficient hot water for its residents.

I find that the retaliation claim against Fratalone may proceed past the screening stage. Mr. Grohs has alleged constitutionally protected conduct in the form of the filing of his civil complaint in Civ. No. 12-0905. Furthermore, Mr. Grohs's allegations of the partial strip search conducted on June 2, 2013 could rise to the level of an adverse action. *See Watson v. Fisher*, 558 F. App'x 141, 142 (3d Cir. 2014) (per curiam) (noting that First Amendment retaliation claim should have survived motion to dismiss where plaintiff and other inmates were targeted for invasive strip searches); *Ayotte v. Barnhart*, 973 F. Supp. 2d 70, 82 (D. Me. 2013) ("The Magistrate Judge correctly . . . conclude[d] that Mr.

Ayotte's two strip searches were serious enough to raise Officers Doyle and Cutler's adverse action from de minimis to something more significant and trial-worthy."); *Horstkotte v. Comm'r, New Hampshire Dep't of Corr.*, No. 08-0285, 2010 WL 1416790, at *4 (D.N.H. Apr. 2, 2010) ("Courts have held that strip searches, in conjunction with other discipline may constitute adverse actions) (citations omitted).

Finally, Mr. Grohs has at least suggested a causal link between his protected constitutional activity and the adverse action. *See generally Velasquez v. DiGuglielmo*, 516 F. App'x 91, 95 (3d Cir. 2013) (per curiam) (citing *Carter v. McGrady*, 292 F.3d 152, 157, 158 (3d Cir. 2002); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). In his version, an officer made a comment that could be construed as an admission that the search was ordered as a means of retaliation.

This search may never have occurred; Fratalone may have had ample reason to order it; the comment about hot water may have been just a stray remark by an unknown officer. I must add that the First Amendment is not a shield against disagreeable remarks, even ones that refer to a court case. I will not consider such disputed factual issues at this screening stage, however; the allegation is sufficient to require an answer from the State.

The component of the retaliation claim that is based on the June 2, 2013 incident, as to Fratalone only, will not be dismissed, but will be permitted to proceed past screening.

###### iii.   *August 28, 2013*

On August 28, 2013, Mr. Grohs alleges, Rock ordered a housing unit officer to inform him that storage containers were to be kept in the back, not the front, of cubicles. Mr. Grohs further states that he has a documented injury that prevents him from having access to his property that is stored inside a container that is underneath another heavy container. Construed liberally, the claim seems to be that Rock instituted this policy in retaliation for Mr. Grohs's pursuing his First Amendment rights.

Mr. Grohs fails to state a retaliation claim against Rock based on this incident. "Examples of adverse actions that have, in certain cases, been found to support a retaliation claim include filing false misconduct reports . . . transferring a prisoner to another prison . . . and placing a prisoner in administrative custody." *Keeling v. Barrager*, No. 11-0365, 2014 WL 1338077, at *7 (M.D. Pa. Apr. 3, 2014) (internal citations omitted). Ordering Mr. Grohs to place his storage container in another part of his cubicle does not constitute an adverse action as it is not "sufficient to deter a person of ordinary firmness from exercising his rights." *Allah*, 229 F.3d at 225 (internal quotation marks and citations omitted). *See also McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (noting that to state a cognizable First Amendment retaliation claim, the effect on the alleged conduct need not be great but it must be more than *de minimis*).

The legal standard is stated in relation to a hypothetical individual of ordinary firmness. It is relevant, however, that Mr. Grohs himself  was

undeterred. He states in the complaint that, after August 28, 2013, he continued to press many other issues and grievances. On November 6, 2013, for example, he wrote to Holmes requesting "something 'in-house' to be promptly done about the deficient STU law library, the inadequate or nonexistent legal copy service, the overcharging for copies, and the failure to designate a storage area for legal material."  (Dkt. No. 1 at p. 18 (emphasis added).) *See Monroe v. Phelps*, 520 F. App'x 67, 70 (3d Cir. 2013) (per curiam) ("We agree with the District Court that the record does not support a finding that Monroe was subject to adverse actions of the type that would deter a prisoner of ordinary firmness from exercising his constitutional rights. As the District Court pointed out, Monroe filed several grievances after the January 7, 2008 incident, thus showing that he was not deterred from exercising his First Amendment rights.").

The complaint fails to state that the August 28, 2013 incident constituted an "adverse action."  This claim against Rock will be dismissed.

      iv.   *December 18, 2013*

The next alleged incident, which allegedly involved defendants Westrich, B. Davis and Santiago, occurred on December 18, 2013.

      a.  Westrich

On December 18, 2013, as alleged above, Westrich seized from Mr. Grohs's cubicle certain legal materials, relating to Mr. Grohs himself and to other residents. Mr. Grohs was purportedly serving as a paralegal to these inmates. Westrich allegedly also seized nineteen metal paper clips and one

forty-five degree angle. Mr. Grohs' personal legal materials were returned to him an hour after seizure. Material relating to other residents were allegedly returned to them. Westrich ordered Mr. Grohs not to possess documents belonging to other residents, and not to possess them outside of the law library.

A one-hour deprivation of personal legal materials does not rise to the level of a retaliatory, adverse action. *See Baker v. Mackie*, 2010 WL 5087278, at *5. Grohs has no cognizable rights in the claims of other residents, so return of their papers to them does not constitute an adverse action as to him. The seizure of items such as papers clips would not deter a person of reasonable firmness from exercising his rights, and has not deterred Grohs. *See Allah*, 229 F.3d at 225; *see also McKee*, 436 F.3d at 170 (noting that to state a retaliation claim, the conduct alleged to be adverse must be more than *de minimis*). Mr. Grohs's immediate complaint to B. Davis about Westrich's actions tends to corroborate that the seizure would not deter him. *See Monroe*, 520 F. App'x at 70.

For these reasons, Mr. Grohs fails to state a retaliation claim against Westrich arising from this incident. This component of his retaliation claim will be dismissed.

### b. B. Davis & Santiago

Mr. Grohs also may have intended to raise a retaliation claim against B. Davis and Santiago arising from certain events on December 18, 2013. He alleges that he was at the Resident Christmas Party when he was summoned to

another building, where he was locked in a holding cell for forty-five minutes.
B. Davis then appeared and informed Grohs that he was responding to
complaints Mr. Grohs had made about the conditions of the facility. Grohs told
B. Davis about the seizure of his papers by Westrich earlier that day. B. Davis
responded that she would furnish a letter addressing his concerns. The letter,
dated December 6, 2013, and authored by Santiago, read as follows:

> Regarding the alleged confiscation of legal material by
> Custody, be advised that Custody staff does not
> confiscate legal papers as long as the same are in
> possession of the owner. It should be noted, that
> information was received that you are doing legal work
> for other residents, which is contributing to your
> possession of legal work belonging to several residents.
> Such documents were confiscated and returned to
> their owners.

(Dkt. 1 at p. 28.)

To the extent that Mr. Grohs is asserting a retaliation claim against B.
Davis for his placement in a holding cell for forty-five minutes, I find that such
action by B. Davis is not sufficient to deter a person of reasonable firmness
from exercising his rights. *See Szemple v. Talbot*, 141 F. App'x 52, 54 (3d Cir.
2005) (noting that confinement in administrative segregation can constitute
adverse action, but finding plaintiff failed to allege adverse action where his
confinement was limited to a few days and the complaint did not describe any
conditions of confinement that would deter a person of ordinary firmness from
exercising his constitutional rights).

At any rate, the context clearly establishes that this was not intended as
imprisonment or punishment. Mr. Grohs indicates that he was brought to this

other building so that he could meet with B. Davis, who was responding politely to the concerns that Mr. Grohs had previously raised. After his meeting with B. Davis, Mr. Grohs was permitted to return to his living quarters.

Santiago's letter, allegedly dated December 6, 2013, could not literally have been a response to Mr. Grohs' complaints about the seizure earlier on December 18, 2013. It was a preexisting statement of policy pertinent to that seizure, as well as to the seizure in May, 2013. I fail to find any adverse action or retaliation in this.

For the foregoing reasons, Mr. Grohs has failed to state a retaliation claim against Westrich, B. Davis and Santiago arising from the December 18, 2013 incident. This claim will be dismissed.

     v.    *Defendants Santiago, Buechele, S. Davis & B. Davis*

In addition to the specific incidents outlined above, Mr. Grohs makes more general allegations against certain other defendants. For example:

> Defendants Santiago, Buechele, S. Davis, and B. Davis were aware that Defendants Rock, Fratalone, and Westrich were, for a prolonged period of time, violating Plaintiff's constitutional rights for all the reasons expressed *supra.* Notwithstanding the numerous remedy forms and other written complaints submitted, prior to December 18, 2013, to these Administrative Defendants Santiago, Buechele, S. Davis, and B. Davis.

(Dkt. No. 1 at p. 32.) To the extent Mr. Grohs may be asserting retaliation claims against these defendants based on the incidents discussed above, those claims fail for the reasons expressed above.

At any rate, it appears that Mr. Grohs may be attempting to attach liability to Santiago, Buechele, S. Davis and B. Davis based on *respondeat superior*. Section 1983 does not support a claim based on *respondeat superior*. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Instead, a plaintiff must allege that a supervisor had a personal involvement in the alleged wrongs. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also In re Bayside Prison Litig.*, Civ. No. 97-5127, 2007 WL 327519, at *5 (D.N.J. Jan. 30, 2007). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. *See Rode*, 845 F.2d at 1207; *see also Baker v. Monroe Tp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995); *Jackson v. Camden Cnty. Corr. Facility*, Civ. No. 12-7538, 2013 WL 1844636, at *3 n.1 (D.N.J. Apr. 29, 2013). No such allegations are made; *a fortiori,* they are not made with the specificity required by *Twombly* and *Iqbal*.

These vague and generalized claims against Santiago, Buechele, S. Davis, and B. Davis will be dismissed as well.

D. <u>State Law Claims</u>

Finally, Mr. Grohs attempts to raise state law claims against defendants Santiago, Buechele, S. Davis, B. Davis, Rock, Fratalone and Westrich, citing this Court's supplemental jurisdiction under 28 U.S.C. § 1367. His complaint alleges violations of his rights under Article I of the New Jersey Constitution, the New Jersey Patients' Bill of Rights and the NJCEPA.

Because there are no federal claims remaining against defendants Holmes, Santiago, Buechele, S. Davis, B. Davis, Rock and Westrich, the Court will decline to exercise supplemental jurisdiction over Mr. Grohs's state law claims against these defendants. *See T.R. v. Cnty. of Delaware*, No. 13-2931, 2013 WL 6210477, at *8 (E.D. Pa. Nov. 26, 2013) (declining supplemental jurisdiction over state law claims over one defendant where there are no viable federal claims against that defendant, despite the fact that plaintiff may have pled plausible claims against another defendant) (citations omitted); *see also Nadal v. Christie*, No. 13-5447, 2014 WL 2812164, at *8 (D.N.J. June 23, 2014).

With respect to the state law claims against Fratalone, it is worth noting that "[f]ree speech claims under the New Jersey Constitution are interpreted consistently with free speech claims under the First Amendment." *Gomez v. Town of W. New York*, No. 13-0689, 2013 WL 5937415, at *4 (D.N.J. Nov. 4, 2013) (citing *Johnson v. Yurick*, 156 F. Supp. 2d 427, 436 (D.N.J. 2001), *aff'd* 39 F. App'x 742 (3d Cir. 2002); *Binkowski v. State*, 322 N.J. Super. 359, 369, 731 A.2d 64 (N.J. Super. Ct. App. Div. 1999)). As Mr. Grohs has stated a First Amendment retaliation claim against Fratalone, his related state law claim arising under Article I of the New Jersey Constitution will also be permitted to proceed.

Mr. Grohs also claims his state law rights have been violated under the New Jersey Patients' Bill of Rights, N.J. STAT. ANN. § 30:4-24.2 which states in part as follows:

> Subject to any other provisions of law and the
> Constitutions of New Jersey and the United States, no
> patient shall be deprived of any civil right solely
> because of receipt of treatment under the provisions of
> this Title nor shall the treatment modify or vary any
> legal or civil right of any patient, including, but not
> limited to, the right to register for and to vote at
> elections, or rights relating to the granting, forfeiture,
> or denial of a license, permit, privilege, or benefit
> pursuant to any law.

N.J. STAT. ANN. § 30:4-24.2. It is difficult to determine whether such a claim

would survive scrutiny, but the State's response would be helpful to the Court.

I will permit this state law claim to proceed, as against Fratalone only, at this

early stage of the proceedings.[2] As to other defendants, I will not exercise

supplemental jurisdiction over this state law claim, because there are no viable

federal claims against them.

Mr. Grohs cites the NJCEPA, N.J. STAT. ANN. § 34:19-2, but such a claim

fails as a matter of law. The NJCEPA protects "employees" from retaliatory

actions from their "employers." *See id.* § 34:19-3. An "employer" is defined by

the NJCEPA as "any individual, partnership, association, corporation or any

person or group of persons acting directly or indirectly on behalf of or in the

interest of an employer with the employer's consent[.]" *Id.* § 34-19-2(a). An

"employee" is defined under the NJCEPA as "any individual who performs

services for an under the control and direction of an employer for wages or

other renumeration." *Id.* § 34:19-2(b). Neither STU-Annex nor any other

---

[2] "The Sexually Violent Predator Act ("SVPA") specifically exempts sexually violent predators from the New Jersey Patients' Bill of Rights, N.J.S.A. 30:4-24.2." *Oliver v. Roquet*, No. 13-1881, 2014 WL 4271628, at *3 (D.N.J. Aug. 28, 2014) (Linares, J.).This complaint, however, gives no indication that Mr. Grohs is civilly committed under the SVPA, a matter that can be established one way or the other in subsequent filings.

named defendant is Mr. Grohs's employer, and he is not their employee. His claim under the NJCEPA is dismissed.

## V.    CONCLUSION

All claims are dismissed for failure to state a claim, with the following exception. The Court will permit Mr. Grohs' retaliation claim against defendant Fratalone to proceed past screening. The related state law claims against Fratalone under Article I of the New Jersey Constitution and the New Jersey Patients' Bill of Rights shall be permitted to proceed past screening.

It appears that the dismissed counts are fundamentally defective as a matter of law, and that their deficiencies are not mere matters of pleading. Nevertheless, in an abundance of caution, I enter these dismissals without prejudice to the submission of a properly supported motion to amend the complaint, attaching a proposed pleading, within 30 days.

An appropriate order will be issued.

Dated: September 26, 2014

KEVIN MCNULTY
United States District Judge

27