UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| STEVEN GROHS, | : | |
|---|---|---|
| Plaintiff, | : | Civ. No. 13-7870 (KM) (MAH) |
| v. | : | |
| | : | **OPINION** |
| SGT. FRATALONE, | : | |
| Defendant. | : | |

## KEVIN MCNULTY, U.S.D.J.

### I. INTRODUCTION

The plaintiff, Steven Grohs, is a resident at the Special Treatment Unit ("STU") in Avenel, New Jersey. He is proceeding *pro se* with a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in which he seeks declaratory, injunctive and monetary relief. Previously, this Court screened Mr. Grohs's complaint and permitted his retaliation and supplemental state law claims to proceed against one defendant, Sgt. Fratalone. Familiarity with that screening opinion (Dkt. No. 3) is assumed; this opinion should be read as a supplement to it.

Presently pending before the Court is Mr. Grohs's amended complaint. The Court must now review the proposed amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief form a defendant who is immune from suit. For the reasons set forth below, the amended complaint will be permitted to proceed in part, and dismissed in part.

## II. BACKGROUND

The original complaint named several defendants and raised multiple issues. On screening, I permitted a First Amendment retaliation claim, and related state law claims, to go forward against Sgt. Fratalone. The remaining claims I dismissed without prejudice. Sgt. Fratalone answered the original complaint, as screened. (*See* Dkt. No. 10.) Mr. Grohs, however, filed a motion to amend his complaint. (*See* Dkt. No. 13.) I granted that motion to amend and stated that the amended complaint would be screened in due course.

The allegations of the amended complaint center on two alleged events. As to the first, it states viable claims. As to the second, it does not.

First, the amended complaint alleges that Grohs was strip searched on June 2, 2013. The amended complaint alleges that defendants Rock-Asencio, Fratalone, Datz and "John Doe" were involved in this strip search. More specifically, Rock-Asencio allegedly radioed Fratalone that she wanted Grohs searched for contraband. Fratalone ordered Grohs to put his hands in the air. Datz then conducted the physical search. Datz pulled up Grohs's shirt and placing a gloved hand underneath Grohs's underpants, making contact with his genitals and buttocks. Datz also lowered Grohs's underwear and pants, exposing his buttocks. Datz then ordered Grohs to remove his sneakers and socks. All the time Fratalone stood nearby and watched. After the search, Grohs heard an unidentified John Doe corrections officer state, "I hope that was worth his hot water."[1] The search was allegedly done in retaliation for Grohs's exercise of his First Amendment rights.

Second, the amended complaint alleges that defendants Santiago, Westrich and Rock-Asencio retaliated against Grohs by seizing legal documents that were in Grohs's possession, but belonged to other inmates, as well as some personal property. Defendant Westrich allegedly

---

[1] Mr. Grohs has an active civil rights case pending in this Court where he has alleged inadequate hot water at the Special Treatment Unit. (*See* Civ. No. 12-0905)

2

appeared at Mr. Grohs's cubicle on December 18, 2013, acting under orders from defendant Rock-Asencio. Westrich informed Grohs that he was there to confiscate all legal documents in the names of residents other than Grohs. Westrich confiscated approximately ten manila envelopes which contained legal documents that belonged to other residents. Westrich also confiscated personal property of Mr. Grohs, including metal paper clips and a plastic forty-five degree angle. Westrich provided Grohs with a Contraband Seizure Form which stated that the items seized were deemed contraband and posed a threat to the orderly operation of the facility.

Later that day, defendant Santiago had Mr. Grohs removed from open population and placed in an interrogation room. Santiago then interrogated Grohs about a complaint he had made about inadequate access to courts and the storage of legal documents. Grohs complained to Santiago about Westrich's search and confiscation of his personal property. Santiago led Grohs to believe that he was the official who ordered the search because of Grohs's earlier complaints regarding access to courts and the storage of his legal documents.

The amended complaint asserts eight counts:

1. Pursuant to 42 U.S.C. § 1983, against Defendants Rock-Asencio, Fratalone, Datz, and Doe for violating the plaintiff's First Amendment right to be free from retaliation when they initiated or participated in a search of plaintiff's person ("Count I").

2. Pursuant to 42 U.S.C. § 1983, against Defendants Santiago, Rock-Asencio and Westrich for violating the plaintiff's First Amendment right to be free from retaliation from the search and seizure of plaintiff's personal property ("Count II").

3. Pursuant to 42 U.S.C. § 1983, against Defendant Westrich for violating the plaintiff's Fourteenth Amendment right to due process ("Count III").

4. Pursuant to 42 U.S.C. § 1983, against Defendant Westrich for violating the plaintiff's Fourteenth Amendment right to equal protection under the law ("Count IV").

5. Pursuant to N.J.S.A. § 10:6-2(c), against Defendants Santiago, Rock-Asencio, Westrich, Fratalone, Datz, and Doe for violating the plaintiff's rights under the New Jersey Civil Rights Act ("Count V").

6. Pursuant to Article I, Section 1, of the New Jersey Constitution, against Defendants Santiago, Rock-Asencio, Westrich, Fratalone, Datz and Doe for violating the plaintiff's rights of free speech ("Count VI").

7. Pursuant to N.J.S.A. § 30:4-24.2, against Defendants Santiago, Rock-Asencio, Westrich, Fratalone, Datz and Doe for violating the Patient's Bill of Rights ("Count VII").

8. Pursuant to N.J.A.C. §§ 10A:35-2.1 and 10:36A-2.1, against Defendants Santiago, Rock-Asencio, Westrich, Fratalone, Datz and Doe for violating the plaintiff's rights under the SVPA ("Count VIII").

### III. LEGAL STANDARD

On screening, "[t]he legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana,* 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling,* 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), as explicated by the United States Court of Appeals for the Third Circuit. To survive the court's screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d

Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, *"pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## IV. SCREENING—FEDERAL CLAIMS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v.*

*Plains Twp. Police Dep't,* 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins,* 487 U.S. 42, 48 (1988).

A. Count I (first amendment retaliation; strip search)

Count I of the amended complaint alleges that on June 2, 2013, defendants Rock-Asencio, Fratalone, Datz, and Doe participated in a strip search of Grohs in retaliation for his exercise of First Amendment rights. "A [person] alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mack v. Yost,* 427 F. App'x 70, 72 (3d Cir. 2001) (quoting *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003)).

I permitted this First Amendment retaliation claim, as articulated in the original complaint, to proceed against Sgt. Fratalone. In brief, my earlier screening opinion found that the original complaint alleged constitutionally protected conduct, *i.e.*, the filing of a federal court complaint, Civ. No. 12-0905, complaining of lack of hot water at the STU. (*See* Dkt. No. 3 at p. 17.) It further found that the alleged strip search could rise to the level of an adverse action. (*See id.* (citing *Watson v. Fisher,* 558 F. App'x 141, 142 (3d Cir. 2014); *Ayotte v. Barnhart,* 973 F. Supp. 2d 70, 82 (D. Me. 2013); *Horstkotte v. Comm'r, New Hampshire Dep't of Corr.,* No. 08-0285, 2010 WL 1416790, at *4 (D.N.H. Apr. 2, 2010))) Finally, it found the officer's alleged comment that he "hope[d] it was worth his hot water" sufficient to suggest a causal link.[2]

---

2    Of course, we are still at the allegation stage. As I pointed out in my earlier opinion:

> This search may never have occurred; Fratalone may have had ample reason to order it; the comment about hot water may have been just a stray remark by an unknown officer. I must add that the First Amendment is not a shield against disagreeable remarks, even ones that refer to a court case. I will not consider such disputed factual issues at this screening stage, however; the allegation is sufficient to require an answer from the State.

Count I of the amended complaint asserts a retaliation claim similar to that asserted against Fratalone in the original complaint. The amended complaint adds defendants Rock-Asencio, Datz, and John Doe, alleging that they were involved in the strip search. At this early screening stage, the Court will permit Count I to proceed against these defendants as well.[3]

B. Count II (first amendment retaliation; room search and seizure)

Count II of the amended complaint asserts that defendants Santiago, Rock-Asencio, and Westrich retaliated against him for exercise of his First Amendment rights. They did so by participating in Westrich's search of Grohs's cubicle and seizure of his property on December 18, 2013. The original complaint asserted a similar claim against defendants Westrich and Santiago (along with B. Davis, who is no longer named). I screened that claim, found it inadequate, and did not permit it to proceed. Count II, as now amended, does not remedy the defects of the original claim, and will likewise be dismissed, for the reasons that follow.

First, as I explained in my prior Opinion, Mr. Grohs does not have cognizable rights with respect to legal claims or legal papers of residents other than himself. Seizure of others' legal papers might constitute some injury to them (although it appears that the papers were quickly returned). As to Grohs, however, such a seizure would not constitute a deprivation of rights or even a retaliatory adverse action. *See, e.g., See Perotti v. Quinones*, 488 F. App'x 141, 145 (7th Cir. 2012) ("[I]nmates do not have a constitutional right to provide legal assistance to other prisoners.") (citing *Shaw v. Murphy*, 532 U.S. 223, 231 (2001); *Watkins v. Kasper*, 599 F.3d 791, 797 (7th Cir. 2010)); *see also Payne v. Pummill*, No. 13-1172, 2013 WL 6175819, at *1 (S.D. Ohio Nov. 22, 2013) ("While the First Amendment right of prisoners for access to the courts is

---

(Dkt. No. 3 at p. 18)

[3] If plaintiff succeeds in identifying the John Doe defendant, he shall submit to the Court a proposed amended complaint that names this defendant so that the Court can order the amended complaint served on him.

7

well-established, a prisoner has no independent right to assist other prisoners with their legal work.") (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (en banc)), *report and recommendation adopted,* 2014 WL 272598 (S.D. Ohio Jan. 23, 2014); *Armstrong v. Coleman*, No. 11-1074, 2013 WL 3776919, at *11 (W.D. Pa. July 15, 2013) (noting that "inmate-to-inmate correspondence that includes legal assistance does not receive any more constitutional protection than correspondence between inmates without any legal assistance.") (citations omitted). Whatever rights were involved in this seizure were not Grohs's rights.

The only seized property that belonged to Grohs himself consisted of the metal paper clips and a plastic forty-five degree angle. Seizure of these trifling items would not rise to the level of retaliation, because it would not deter a person of reasonable firmness from exercising his First Amendment rights. *See McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (noting that to state a retaliation claim, the conduct alleged to be adverse must be more than *de mimimis*). Grohs's immediate complaint to Santiago about the seizure tends to corroborate that the conclusion that the seizure would not deter him—because it did not. *See Monroe v. Phelps*, 520 F. App'x 67, 71 (3d Cir. 2013) (prisoner who filed several grievances after purported excessive force incident shows that he was not deterred from exercising his First Amendment rights).

Count II of the amended complaint fails to state a First Amendment retaliation claim, It will be dismissed, and will not be permitted to proceed past screening.

C. Count III (due process; room search and seizure)

Count III of the amended complaint alleges that Westrich's seizure of Grohs's property on December 18, 2013, violated due process. Routine claims of property deprivation or damage, even at the hands of a State actor, are not automatically constitutional claims:

> An unauthorized deprivation of property by a state actor, whether intentional or negligent, does not constitute a violation of the

8

> procedural requirements of the Due Process Clause of the
> Fourteenth Amendment if a meaningful post-deprivation remedy
> for the loss is available. *Hudson v. Palmer*, 468 U.S. 517, 530-36
> (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *overruled
> in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 328
> (1986). In *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36
> (1982), the Supreme Court explained, however, that post-
> deprivation remedies do not satisfy the Due Process Clause if the
> deprivation of property is accomplished pursuant to established
> state procedure rather than through random, unauthorized action.

*Stokes v. Lanigan*, No. 12-1478, 2012 WL 4662487, at *4 (D.N.J. Oct. 2, 2012).

New Jersey provides a post-deprivation remedy for unauthorized deprivation of property by public employees through the New Jersey Tort Claims Act, N.J. STAT. ANN. § 59:1-1, *et seq.* Because a meaningful post-deprivation remedy is available, Count III fails to state a viable constitutional claim. Count III is dismissed, and will not be permitted to proceed past screening.

D. Count IV (equal protection; room search and seizure)

Count IV alleges that Westrich's December 18, 2013 search and seizure of Grohs's property also violated the Equal Protection clause.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Thus, to state a class-based claim under the Equal Protection Clause, a plaintiff must allege that: (1) he is a member of a protected class; and (b) he was treated differently from similarly situated inmates. *See id.*

The amended complaint does not allege that Mr. Grohs is a member of a protected class. Persons designated as sexually violent predators are not a protected class. *See Allen v. Mayberg*, No. 06-1801, 2013 WL 3992016, at *7 (E.D. Cal. Aug. 1, 2013) (SVPs are not a suspect or

quasi-suspect class for Equal Protection purposes); *Hawkins v. Ahlin*, No. 12-0626, 2013 WL 3475187, at *6 n.7 (C.D. Cal. July 10, 2013) (law does not support that being a civilly committed SVP puts petitioner in a protected class) (citations omitted).[4]

Count IV fails to state an equal protection claim. It will be dismissed, and will not be permitted to proceed past screening.

E. Dismissals of Federal Claims With Prejudice

Count I, as stated, will be permitted to go forward. The three remaining federal law counts, II, III, and IV, are dismissed with prejudice. Closely related claims were asserted in the original complaint, but dismissed without prejudice at the screening stage for failure to state a claim. The versions re-pleaded in the amended complaint add defendants or alternative legal theories, but are based on the same facts or claims as the original versions, and do not remedy their deficiencies. At least as to Counts II and III, this is no mere deficiency of pleading; a cause of action is clearly precluded as a matter of law. As to Count IV, the facts are no more developed, and the alternative legal theory is strained at best. To articulate multiple causes of action with respect to this fairly simple set of facts, two opportunities are sufficient. Although Count I will go forward, the dismissals of Counts II, III, and IV are with prejudice.

## V. SCREENING—STATE LAW CLAIMS

A. Defendants Santiago and Westrich

Counts VI through VIII of the amended complaint assert state law claims arising from the cubicle search against, *inter alia,* defendants Santiago and Westrich. (The other defendants are

---

[4] There is a narrower, rarely sustained equal protection claim known as a "class of one" theory. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Under that theory, a plaintiff must state facts showing that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). The amended complaint is devoid of any allegation that Mr. Grohs was treated differently from anyone. Nor is there any hint that any version of the facts could meet the stringent "no rational basis" test.

discussed separately below.) As a result of the rulings in the previous section (*see* pp. 7-10, *supra*), there are no longer any federal claims pending against Santiago and Westrich. The only readily apparent potential basis for subject matter jurisdiction over the state law claims against them would be a discretionary exercise of supplemental jurisdiction. *See* 28 U.S.C. § 1367.

I decline to exercise supplemental jurisdiction over the state law claims against Santiago and Westrich. There are no viable federal claims against them. The only federal claim that does remain, Count I, involves a separate incident in which they were not involved. The case is at a very early stage. Few judicial resources have been invested, and there are no reasons of efficiency for retaining such state law claims. *See T.R. v. Cnty. of Delaware*, No. 13-2931, 2013 WL 6210477, at *8 (E.D. Pa. Nov. 26, 2013) (declining supplemental jurisdiction over state law claims over one defendant where there are no viable federal claims against that defendant, despite the fact that plaintiff may have pled plausible claims against another defendant) (citations omitted); *see also Nadal v. Christie*, No. 13-5447, 2014 WL 2812164, at *8 (D.N.J. June 23, 2014).

As to defendants Santiago and Westrich, then, Counts V, VI, VII, and VIII are dismissed for lack of jurisdiction; they will not be permitted to proceed past screening. In the remainder of this section, I consider Counts V–VIII as they relate to the remaining defendants.

### B. Counts V & VI (Rock-Asencio, Fratalone, Datz, and Doe)

Count V of the amended complaint alleges that defendants Rock-Asencio, Fratalone, Datz, and Doe violated Grohs's rights under the New Jersey Civil Rights Act. The New Jersey Civil Rights Act provides in relevant part:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this

> State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief. The penalty provided in subsection e. of this section shall be applicable to a violation of this subsection.

N.J. STAT. ANN. § 10:6-2(c). The New Jersey Civil Rights Act parallels Section 1983. *See Associated Builders & Contractors, Inc. v. City of Jersey City*, 2015 WL 4640600, at *7 (D.N.J. Aug. 3, 2015). This State statute confers a right of action for a violation of rights secured by the New Jersey State Constitution.

Count VI of the amended complaint alleges one such actionable violation of the New Jersey Constitution. Grohs alleges that defendants Rock-Asencio, Fratalone, Datz, and Doe participated in the strip search, in retaliation for his exercise of his State constitutional free speech rights. This claim virtually duplicates the federal Section 1983 claim, Count I, which I have permitted to go forward. (*See* pp. 6–7, *supra*.) Factually, it rests on the same allegations. And legally it is closely parallel: "Free speech claims under the New Jersey Constitution are interpreted consistently with free speech claims under the First Amendment." *Gomez v. Town of W. New York*, No. 13-0689, 2013 WL 5937415, at *4 (D.N.J. Nov. 4, 2013) (citing *Johnson v. Yurick*, 156 F. Supp. 2d 427, 436 (D.N.J. 2001), *aff'd* 39 F. App'x 742 (3d Cir. 2002); *Binkowski v. State*, 322 N.J. Super. 359, 369, 731 A.2d 64 (N.J. Super. Ct. App. Div. 1999)). Because Count I is going forward, this state law claim under the New Jersey Civil Rights Act and Article I of the New Jersey Constitution will be permitted to proceed as well, but only as to the free speech retaliation claim against Rock-Asencio, Fratalone, Datz, and Doe which arises from the strip search on June 2, 2013. In all other respects, Counts V and VI are dismissed.

C.  Count VII

Count VII of the amended complaint alleges that Rock-Asencio, Fratalone, Datz, and Doe violated Grohs's rights under the New Jersey Patient's Bill of Rights. The cited portion of the Patients' Bill of Rights reads as follows:

> Subject to any other provisions of law and the Constitutions of New Jersey and the United States, no patient shall be deprived of any civil right solely because of receipt of treatment under the provisions of this Title nor shall the treatment modify or vary any legal or civil right of any patient, including, but not limited to, the right to register for and to vote at elections, or rights relating to the granting, forfeiture, or denial of a license, permit, privilege, or benefit pursuant to any law.

N.J. STAT. ANN. § 30:4-24.2.

But Mr. Grohs is civilly committed under the SVPA. "The Sexually Violent Predator Act ("SVPA") specifically exempts violent predators from the New Jersey Patients' Bill of Rights, N.J.S.A. 30:4-24.1." *Oliver v. Roquet*, No. 13-1881, 2014 WL 4271628, at *3 (D.N.J. Aug. 28, 2014).

Count VII therefore fails to state a claim as a matter of law; it will be dismissed, and will not be permitted to proceed past screening.

D.  Count VIII

Count VIII of the amended complaint alleges that defendants Rock-Asencio, Fratalone, Datz, and Doe are liable for violating Grohs's rights under the SVPA. Mr. Grohs seeks relief pursuant to a section of the New Jersey Administrative Code which states:

> Subject to the Sexually Violent Predator Act (SVPA), and any other provisions of law and the Constitution of New Jersey and the United States, a resident shall not be deprived of a civil right solely by reason of receiving treatment under the provisions of the SVPA. Treatment shall not modify or vary legal or civil rights including but not limited to, the right to register for and to vote in elections, or rights relating to the granting, forfeiture, or denial of a license,

permit, privilege, or benefit pursuant to any law, except those rights related to providing a safe, secure facility or any appropriate concern.

N.J. ADMIN. CODE § 10:36A-2.1(a).

In *Oliver, supra,* Judge Linares discussed whether this regulation creates a private right of action, and concluded that it does not:

> When a statute does not expressly provide a private right of action, New Jersey courts "have been reluctant to infer" such a right. *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.,* 168 N.J. 255, 773 A.2d 1132, 1142 (N.J. 2001). The factors used by courts to determine whether a statute confers an implied private right of action include whether:
>
>> (1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy
>
> *Id.* at 1143. While courts give weight to all three factors, "the primary goal has almost invariably been a search for the underlying legislative intent." *Id.* (quoting *Jalowiecki v. Leuc,* 182 N.J. Super. 22, 440 A.2d 21, 26 (N.J. Super. Ct. App. Div. 1981)).
>
> Here, N.J.A.C. 10:36A–2.1 does not expressly provide a private right of action, and there is no evidence that the Legislature intended to create an implied right. In fact, it is telling that the SVPA specifically exempts sexually violent predators from New Jersey Patients' Bill of Rights, recognizing that the Depart[ment] of Human Services and the Department of Corrections are specially equipped to handle the needs of these individuals. Further, N.J.S.A. 30:4–27.34 provides that the purpose of a statute enacted by the DHS and DOC is to address the "security concerns and safety of the residents, treatment staff, custodial personnel and others in and about the facility." This purpose does not suggest that a private cause of action was intended. Finally, there is not a single case that cites to N.J.A.C. 10:36A–2.1, much less one that holds that a private cause of action exists under this statute.

*Oliver*, 2014 WL 4271628, at *4. I agree with that analysis. This section of the Administrative Code does not create a private right of action.

Count VIII therefore fails to state a claim as a matter of law; it will be dismissed, and will not be permitted to proceed past screening.

### E. Dismissal of State Law Claims With or Without Prejudice

As to defendants Santiago and Westrich, the dismissal of Counts V-VIII rests on the Court's discretionary declination of supplemental jurisdiction under 28 U.S.C. § 1367. Because the Court did not touch on the merits as to those two defendants, that jurisdictional dismissal is without prejudice to the assertion of such state law claims in a proper forum.

As to defendants Rock-Asencio, Fratalone, Datz, and Doe, however, the analysis is different. Counts V and VI were permitted to proceed as to the free speech retaliation claim arising from the strip search on June 2, 2013, but will otherwise be dismissed. Counts VII and VIII are dismissed for failure to state a claim. Grohs has had two opportunities, but has failed to articulate sufficient facts in support of his alternative theories. And as to Counts VII and VIII, at least, a cause of action is definitively ruled out as a matter of state law. I conclude that these dismissals should be with prejudice.

## VI. CONCLUSION

For the foregoing reasons, the amended complaint will be permitted to proceed as to Count I, and as to Counts V and VI insofar as they assert a free speech retaliation claim against defendants Rock-Asencio, Fratalone, Datz, and Doe. The Court declines to exercise supplemental jurisdiction over Mr. Grohs's state law claims against defendants Santiago and

Westrich, which are dismissed without prejudice. In all other respects the amended complaint is dismissed with prejudice. An appropriate Order will be entered.

Dated: October 16, 2015

_____
KEVIN MCNULTY
United States District Judge